UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:16-cr-00241-KJM |
| Plaintiff, | REDACTED ORDER[1] |
| v. | |
| Monica Morales, | |
| Defendant. | |

This court sentenced defendant Monica Morales to 128 months in prison and 120 months of supervised release for sex trafficking of a minor. Ms. Morales seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A). She alleges she is at increased risk of severe illness from COVID-19 and has suffered sexual assault and abuse while incarcerated. The government opposes. For the following reasons, the court **grants** the motion.

---

[1] The court issues this redacted order in light of the court's prior order granting Ms. Morales's request to file a redacted amended motion and her request to file her medical records under seal. Sealing Order, ECF No. 123. Redactions are noted on page 3, 7, 8 and 10 in brackets and ALL CAPS.

1

## I. BACKGROUND

Ms. Morales is currently serving a 128-month sentence at Federal Correctional Institution (FCI) Dublin. *See* Am. J. & Commitment at 1–2, ECF No. 102.[2] Ms. Morales and her co-defendant were convicted of trafficking a 16-year-old girl. *See* Factual Basis for Plea, Plea Agreement Ex. A, ECF No. 75. Ms. Morales helped recruit the victim, facilitated the sale of commercial sex acts with the victim in customers' cars over the course of a week-long trip to various cities and attempted to recruit the victim for another trip in which she would once again be sex trafficked. *See id*. Ms. Morales entered a plea agreement with the government, *see* Plea Agreement at 2, ECF No. 75, and pled guilty to sex trafficking of a child in violation of 18 U.S.C. § 1591(a)(1), (b)(1), Mins. Change of Plea Hr'g, ECF No. 73; Indictment, ECF No. 13. The court sentenced her to 128 months in prison and 120 months of supervised release. Mins. Sent'g, ECF No. 88.

Ms. Morales has been incarcerated for seven years and has served over 75 percent of her term, counting good conduct credits. *See* Sentence Computation at 3–4, Opp'n Ex. 1, ECF No. 125-1. Prior to being transferred to FCI Dublin, Ms. Morales completed 5 weeks of a "Baby DAP" substance use rehabilitation program at her former facility. Mot. at 31, ECF No. 118;[3] Morales Decl. ¶ 19, Mot. Ex. A, ECF No. 118. Ms. Morales has incurred several infractions while incarcerated, including failing to stand count, being in an unauthorized area, using drugs/alcohol and contacting the public without authorization. *See* Inmate Disciplinary R. at 6–8, Opp'n Ex. 2, ECF No. 125-1.

Ms. Morales is diagnosed with several multi-morbidities associated with COVID-19, including "age, Hispanic ethnicity, American Indian race, class I obesity . . . , major depression, anxiety, post-traumatic stress disorder, and substance abuse disorders[.]" Dr. Abdelghany Decl. ¶ 4, Mot. Ex. J., ECF No. 118. She has received three COVID vaccines and previously tested positive for COVID-19. Morales Med. R. at 37–38, Opp'n Ex. 5, ECF No. 125. Ms. Morales

---

[2] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

[3] The court has reviewed the unsealed motions and exhibits and cites to sealed pages where appropriate.

also has asthma and declares she did not have adequate access to an inhaler in prison, and prison officials had previously "confiscated" her inhaler. Morales Decl. ¶¶ 30–31. She also declares she did not have adequate access to refills for her antidepressants, sometimes going without them for months. *Id.* ¶ 32.

In her declaration, signed under penalty of perjury, Ms. Morales also states she was sexually assaulted [13 LINES REDACTED]. Ms. Morales further declares the COs at FCI Dublin created an environment of inappropriate conduct, abuse and assault that has affected her well-being. *See id.* ¶¶ 19–32. For example, COs would watch her "come from the showers in [her] robe and purposefully wait[] for [her] to return to [her] cell so they could open the door on [her] while she was getting dressed." *Id.* ¶ 20. Ms. Morales declares she "do[es] not feel safe in [her] cell and [she] sleep[s] on the floor at night as a security measure." *Id.*

Ms. Morales sent the warden of FCI Dublin two requests for compassionate release: the first in January 2023, Jan. Req. at 95, Mot. Ex. K, ECF No. 118, and the second in September 2023, Sept. Req. at 2, Reply Ex. P, ECF No. 129-1. On February 24, 2023, Ms. Morales moved for compassionate release in this court. Original Mot., ECF No. 104. The court referred the matter to the Federal Defender to identify an Assistant Federal Defender or a CJA Attorney for appointment to represent defendant on this motion. *See* Min. Order, ECF No. 105. Ms. Morales, through her appointed counsel, has filed an amended motion for compassionate release, Mot., the government opposes, Opp'n, ECF No. 125, and Ms. Morales has replied, Reply, ECF No. 129.

Because Ms. Morales only raised the September request as the basis for administrative exhaustion in her reply, the court provided the government an opportunity to file a sur-reply in response. Sur-Reply Order, ECF No. 130. The government filed a sur-reply stating it determined the request was submitted and "fully satisfies the exhaustion requirement as to [Ms. Morales's] pending claims." Sur-Reply, ECF No. 131.

Agents of the Federal Bureau of Investigation located the trafficking victim, who expressed she "wouldn't mind" if Ms. Morales was released. Opp'n at 6 n.2.

## II. LEGAL STANDARD

The district court that imposed a custodial sentence can modify the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A). A defendant must first exhaust administrative remedies. *Id.* If a defendant has exhausted administrative remedies, the analysis is twofold. First, the court must find "extraordinary and compelling reasons warrant" the requested reduction. *Id.* Second, the court must consider the same factors that were applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable. *See id.*

Section 3582 further requires a reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from Bureau of Prisons (BOP) custody. *See* U.S.S.G. § 1B1.13 (last amended November 1, 2023). The moving defendant bears the burden of "establish[ing] his eligibility for compassionate release." *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022).

The relevant policy statement outlines six categories of circumstances that may constitute "extraordinary and compelling reasons" for a sentence reduction, including in relevant part: serious medical conditions of the defendant "that substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" U.S.S.G. § 1B1.13(b)(1)(B), sexual or physical abuse by a CO where the "misconduct [is] established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger;" *id.* § 1B1.13(b)(4), and "[o]ther [r]easons" where the defendant "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the [other extraordinary and compelling reasons], are similar in gravity to [the other reasons]," *id.* § 1B1.13(b)(5).

## III. ANALYSIS

As noted, the government agrees Ms. Morales has satisfied the exhaustion requirement of § 3582(c). Sur-Reply at 1. The court thus considers whether Ms. Morales's request is supported

4

by extraordinary and compelling reasons and whether the applicable sentencing factors of § 3553(a) weigh in favor of a reduction in sentence.

### A. "Extraordinary and Compelling" Reasons

Ms. Morales argues her multi-morbidities associated with COVID-19, which include her "age, Hispanic ethnicity, American Indian race, class I obesity . . . , major depression, anxiety, post-traumatic stress disorder, and substance abuse disorders," Dr. Abdelghany Decl. ¶ 4, put her at increased risk of severe illness if she contracts the virus. As of January 30, 2024, FCI Dublin has had 560 cases of COVID-19, including 5 active cases.[4] *Cf. United States v. Villafuerte-Diaz*, No. 19-1063, 2020 WL 4336349, at *1–2 (S.D. Cal. July 28, 2020) (granting motion for compassionate release based on defendant's COVID-19 infection risk, her age and her health conditions when FCI Dublin did not report any active cases at the time). Ms. Morales provided a declaration by Dr. Mazin Abdelghany, a practicing physician with training in critical care and a fellowship in Infectious Diseases at the University of California, San Francisco. Dr. Abdelghany Decl. ¶ 2. Dr. Abdelghany's assessment states Ms. Morales's comorbidities indicate she is "at a 91% increased risk of severe COVID-19, 1.6 times more likely to require intensive care unit admission, 2.9 times more likely to require invasive mechanical ventilation, and 2.5 times more likely to die than persons without multimorbidity." Mot. at 26–27; Dr. Abdelghany Decl. ¶ 6. The government argues Ms. Morales's claim is undermined by the fact she already contracted COVID-19 and has not "experienced serious illness as a result." Opp'n at 16. However, this court has recognized a defendant's previous recovery from COVID-19 does not bar a finding of extraordinary and compelling reasons. *See, e.g.*, *United States v. Mathews*, 557 F. Supp. 3d 1057, 1066 (E.D. Cal. 2021); *United States v. Summerfield*, No. 06-00428, 2021 WL 1517923, at *5 (E.D. Cal. Apr. 16, 2021). The court addresses Ms. Morales's vaccination status below.

In addition to her medical concerns regarding COVID-19, Ms. Morales also argues she has not received appropriate care for some of her medical conditions while incarcerated. Ms. Morales suffers from asthma and argues she has not received proper care for this illness while at

---

[4] Federal Bureau of Prisons, *Inmate COVID-19 Data*, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Feb. 1, 2024).

5

FCI Dublin. Morales Decl. ¶¶ 30–31. She claims she did not have adequate access to her inhaler and prison officials had "confiscated" it. *Id.* The government does not dispute these claims but argues "[h]er inhaler was renewed in August 2023, and chest x-rays were ordered at the same time" and "show that she is doing well after a COVID19 infection." Opp'n at 16.

Ms. Morales also argues she did not receive adequate care for her depression. *See* Morales Decl. ¶ 32. She argues prison officials did not properly supply her with refills for her antidepressants, and she sometimes did not have access to the antidepressants for months. *See id.* The government does not specifically dispute these claims but generally argues Ms. Morales's "health conditions, while not negligible, are common and treatable in BOP." Opp'n at 16.

Ms. Morales also describes poor environmental health conditions in the prison, such as exposure to black mold and asbestos. *See* Morales Decl. ¶¶ 30–34. Dr. Abdelghany's declaration describes the negative health impacts this exposure has had on Ms. Morales and that the exposure "puts Ms. Morales at further risk of developing serious disease if she were to develop COVID-19 again while imprisoned." Dr. Abdelghany Decl. ¶ 21.

When a defendant is vaccinated, as Ms. Morales is, this court and others have employed a rebuttable presumption that the risk of severe harm from COVID-19 is not an "extraordinary and compelling" reason under § 3582(c)(1)(A)(i). *See, e.g., United States v. Smith*, 538 F. Supp. 3d 990, 999 (E.D. Cal. 2021). A defendant can rebut this presumption by offering evidence of an elevated personal risk of severe harm despite the protections of vaccination. *Id.* Here, Ms. Morales has provided expert testimony indicating she is at increased risk of severe illness if she contracts COVID-19 again, despite her vaccinations. *See* Dr. Abdelghany Decl. ¶¶ 4–25. Dr. Abdelghany's assessment states, "[d]espite being vaccinated, [Ms. Morales] remains at risk of contracting COVID-19 because of the known decreased vaccine effectiveness against the Omicron variant [and] the known effects of waning immunity over time irrespective of effectiveness against SARS-CoV-2 variants of concern and their subvariants." *Id.* ¶ 23. Moreover, his assessment that her comorbidities are "strongly associated with an increased risk of developing severe COVID-19 disease, requiring hospitalization, requiring admission to the intensive care unit, requiring invasive mechanical ventilation (respiratory life support), and an

increased risk of death" also serves to rebut the presumption. *Cf. United States v. McCarns*, No. 08-00116, 2023 WL 5487428 (E.D. Cal. Aug. 24, 2023) (finding defendant did not rebut the presumption when he did not provide any evidence to suggest he would be at a higher risk of serious illness from contracting COVID-19 despite getting a booster).

Ms. Morales also declares she was sexually assaulted [1.5 LINES REDACTED]. *See* Morales Decl. ¶¶ 22–24. Ms. Morales further declares the COs at FCI Dublin fostered an environment of inappropriate conduct, abuse and assault that has negatively impacted her well-being. *Id.* ¶¶ 19–32; *see* J., *United States of America v. Andrew Jones*, No. 23-212 (N.D. Cal. Nov. 21, 2023), ECF No. 30; Plea Agreement. *United States of America v. Nakie Nunley*, No. 23-213 (N.D. Cal. Sept. 5, 2023), ECF No. 14.[5] She argues because sexual assault has been a recurring trauma in her life, beginning when she was ten years old, the assault and abuse she has experienced in prison prohibits her capacity for "self-care" and makes "[r]ecovery . . . impossible." Mot. at 42; Morales Decl. ¶ 8; Presentence Investigation Report (PSR) at 10–12, ECF No. 85 (sealed).

The U.S. Sentencing Commission's recent amendments to § 1B1.13(b)(4) added experiencing sexual or physical abuse while incarcerated to the list of extraordinary and compelling reasons, so long as the abuse was "committed by, or at the direction of, a correctional officer, an employee or contractor of the [BOP], or any other individual who had custody over the defendant" and the abuser was found guilty in a criminal, civil or administrative proceeding, "unless such proceedings are unduly delayed or the defendant is in imminent danger." U.S.S.G. § 1B1.13(b)(4). To contextualize the amendment to include subsection (b)(4) on the list of circumstances in § 1B1.13(b) that could amount to "extraordinary and compelling reasons," the United States Sentencing Commission stated, "[t]his provision responds to the Department of

---

[5] The court takes judicial notice of the fact of CO Jones's conviction as well as the plea agreement of CO Nakie Nunley, which includes accounts of the sexual assaults and abuse he also committed. Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute in that it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (finding a court may take judicial notice of the existence of an opinion from another court as it "is not subject to reasonable dispute").

Justice's ("DOJ") suggestion that a sentence reduction may be appropriate where an individual in BOP custody has been determined to have been the victim of sexual assault perpetrated by BOP personnel."[6]

[8.5 LINES REDACTED].  Moreover, the government does not dispute Ms. Morales's declarations regarding her experience of sexual assault and harassment.  Neither the parties nor the court have identified a case granting compassionate release under the newly amended § 1B1.13(b)(4), and so case law does not clarify the ambiguity posed by this case, [2 LINES REDACTED].

Even if subsection (b)(4) does not clearly apply, Ms. Morales has shown her circumstances are similarly grave.  As other courts have recognized, "[a]lthough unusually arduous conditions of incarceration 'are not intended as punishment, incarceration in such circumstances is, unavoidably, experienced as more punishing,'" and "[f]ailing to take a sexual assault by a prison guard into account would risk 'met[ing] out a disproportionate punishment.'" *United States v. Kala Bray*, No. 11-20206 (W.D. Tenn. May 3, 2023) (internal citation omitted); *see United States v. Smith*, No. 20-00253, 2023 WL 5487308 (E.D. Cal. Aug. 24, 2023).

As amended, § 1B1.13(b)(5) includes a catch-all provision if a "defendant presents any other circumstance or combination that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."  The court finds Ms. Morales's risk of COVID-19 infection together with her complex of health issues and her experience of sexual assault while incarcerated support a finding of extraordinary and compelling circumstances under § 1B1.13(b)(5).

B.   **Sentencing Guidelines**

To grant a motion for compassionate release, the court must also consider the relevant factors in 18 U.S.C. § 3553(a).  Here, these factors weigh in favor of release.  The Sentencing Guidelines instruct "the court should consider the sentencing factors set forth in 18 U.S.C.

---

[6] United States Sentencing Commission, *Amendments to the Sentencing Guidelines* 2, https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf.

§ 3553(a) when deciding a motion for compassionate release, and that the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (citing U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A). "In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can be in the form of continued narcotics activity or even encompass pecuniary or economic harm." *United States v. Zaragoza*, No. 08-0083, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008).

First, the court considers the "nature and circumstances of the offense." *See* 18 U.S.C. § 3553(a)(1). Ms. Morales's crime of participating in the human trafficking of a 16-year-old girl is serious unquestionably. At the same time, as she states in her motion, and the government does not dispute, it was a non-violent crime. *See* Mot. at 15; *see generally* Opp'n. Additionally, as the court found during sentencing, Ms. Morales "too was exploited by her codefendant who played a greater leadership role when compared to the actions of defendant." Sentencing Statement of Reasons, ECF No. 90. This factor is neutral.

Second, the court considers the length of Ms. Morales's sentence in assessing the appropriateness of release, though this factor is not dispositive. Ms. Morales has completed over 75 percent of her sentence, counting good conduct credits. *See* Sentence Computation at 3–4. This court and others have granted compassionate release to defendants serving significantly less time overall, if the other relevant factors weigh in the defendant's favor. *United States v. Terraciano*, 492 F. Supp. 3d 1082, 1087 (E.D. Cal. 2020) (collecting cases of courts' granting compassionate release to defendants who served less than 30 percent of sentence imposed). In addition, other courts in this district have found a defendant's sexual assault within the jail "exceed[s] any punishment that a court might consider just." *See Smith*, 2023 WL 5487308, at *3 ("Considering . . . Ms. Smith's abuse, the amount of time she has already served, her efforts at rehabilitation, her history, and the nature of her offense—the Court finds that reducing Ms. Smith's sentence would be consistent with the § 3553(a) sentencing factors."). Moreover, Ms. Morales's defense counsel at the time of sentencing did not file objections to the presentence report, and, specifically, "did not argue that [she] should receive a downward adjustment for

9

minor participation" as a result of Amendment 794.  Mot. at 16 & n.2.  Amendment 794, which went into effect three years before Ms. Morales's sentencing, "addresse[d] a circuit conflict and other case law that may [have been] discouraging courts from applying the adjustment in otherwise appropriate circumstances."  *United States v. Quintero-Leyva*, 823 F.3d 519, 522 (9th Cir. 2016) (citing U.S.S.G. App. C. Amend. 794).  Because Ms. Morales has already served the majority of her sentence and compassionate release could resolve potential disparities caused by defense counsel's not raising Amendment 794 as a basis for downward variance at sentencing, this factor weighs in favor of release.

   Third, the court considers the need to "protect the public from further crimes" and "any pertinent policy statement," including considering any dangers early release might pose to the community.  *See* 18 U.S.C. § 3553(a)(2)(C), (a)(5).  The only argument the government appears to raise in response to this factor is Ms. Morales's infractions while incarcerated, *see* Opp'n at 18, for which Ms. Morales has already lost good time credits, *see id.* at 3.  Ms. Morales incurred all but one of her infractions in 2022, [1 LINE REDACTED].  *See* Inmate Disciplinary R. at 6–8.  According to the records provided by the parties, she has not incurred any infractions in the last year.  *See id.*  Ms. Morales also has participated in a substance use rehabilitation program, secured a "coveted UNICOR position sewing and repairing machines" and earned positive work assignment reviews.  Reply at 13; Morales BOP Needs Plan at 3, Mot. Ex. N at 3 ECF No. 118.  Moreover, she had no criminal history before this crime, *see* Presentence Investigation R. at 9–10, ECF No. 85, and BOP's assessment indicates she is at a low risk for recidivism, *see* Morales BOP Needs Plan at 3.  This factor weighs in favor of release.

   Fourth, in its discretion, the court assesses Ms. Morales's potential for danger to the community.  Ms. Morales's release plan includes staying with a family friend who is an advocate for women involved in sex trafficking and has declared she will house and support the re-entry of Ms. Morales.  Morales Decl. ¶ 34; Release Plan, Mot. Ex. M, ECF No. 118; Williams Decl., Mot. Ex. O, ECF No. 118.  Moreover, Ms. Morales will be placed on supervised release for ten years.  Am. J. & Commitment at 1–2.  The government makes no specific arguments Ms. Morales is a danger to the community.  *See generally* Opp'n.  In addition, the victim of Ms. Morales's crime

has stated she "wouldn't mind" if Ms. Morales were released. *Id.* at 6. In sum, the court finds the sentencing factors weigh in favor of Ms. Morales's release.

IV.     **CONCLUSION**

The court **grants Ms. Morales's motion for compassionate release**. The court modifies Ms. Morales's previously imposed sentence of 128 months to time served, with supervised release for 120 months.

There being a verified residence and an appropriate release plan in place, this order is stayed for up to seven days to allow Ms. Morales to make appropriate travel arrangements and to ensure her safe release. Ms. Morales shall be released as soon as appropriate travel arrangements are made, and it is safe for her to travel. If more than seven days are needed to make appropriate travel arrangements and ensure her safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

The court directs the Clerk of Court to file both the sealed and redacted versions of this order as attachments to a single docket entry.

This order resolves ECF No. 118.

IT IS SO ORDERED.

DATED: March 5, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE